UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                      Case No. 21-40722

O.P. INVESTMENT GROUP, LLC,                                 Chapter 11

        Debtor.                                          Judge Thomas J. Tucker

_____/

**ORDER REQUIRING THE DEBTOR TO AMEND DISCLOSURE STATEMENT**

On April 27, 2021, the Debtor filed a plan and disclosure statement, in a document entitled "Debtor's Combined Plan of Reorganization and Disclosure Statement" (Docket # 48).[1] The Court cannot yet grant preliminary approval of the disclosure statement contained within this document ("Disclosure Statement"). The Court notes the following problems, which the Debtor must correct.

1. With regard to each of the first two Groups described in Article II of the Plan on pages 20-23, the Debtor must state: (1) which claims are being treated in each Group, and (2) the estimated amount of each claim (*e.g.*, Group I consisting of allowed administrative claims, including the quarterly fees for the United States Trustee, attorney fees for Debtor's counsel, Schafer and Weiner, PLLC in the estimated amount of $110,000 (exclusive of funds set aside for the payment of Professional fees); the claim of Lakeshore Outdoor Service in the amount of $15,000 for post-petition snow removal; and the claims of DTE Energy and SEMCO Energy Gas Company in the amount of $2,000 for utilities; and Group II consisting of claims that are entitled to priority under 11 U.S.C. § 507(a)(8), including the allowed priority claims of the Macomb

---

[1] This was filed more than a month before the deadline for doing so, which was set at May 28, 2021 by the Court's February 17, 2021 scheduling order (Docket # 25).

County Treasurer in the estimated amount of $126,786.93).[2] The Debtor also must state whether it expects to seek to employ other Professionals, what type of professional it expects to retain (*e.g.*, an accountant, real estate appraiser, or expert witness) and the estimated amount of each professional's fees.

2. The Debtor must delete paragraph 2.3, of the Plan, entitled "Group III - Other Priority Claims." If there are any "Other Priority Claims" of the type described in Group III on page 23, those claims must be classified and treated under Article III. 11 U.S.C. § 1123(a)(1) requires classification of all priority claims except those of a kind specified in 11 U.S.C. §§ 507(a)(2), 507(a)(3), or 507(a)(8).

3. In describing the claim of the Bank in Class I and the two alternative treatments of that claim, on pages 24-28 of the Plan, the Debtor must do all of the following.

First, in describing the treatment of the Bank's claim under paragraph 3.1.1 ("if the Bank votes in favor of the Plan"), the Debtor must state, in paragraph 3.1.1.1, in a specific dollar amount, what the Allowed amount of the Bank's claim will be. The current statement of this amount is needlessly opaque to all creditor-readers, except possibly the Bank itself.

Second, in describing the alternative treatment of the Bank's claim under paragraph 3.1.2 ("if the Bank votes against the Plan"), the Debtor must state the dollar amounts of the Bank's bifurcated claim — *i.e.*, the Debtor must state, in paragraph 3.1.2.3, the dollar amount of the Bank's Secured Claim, and the Debtor must state, in paragraph 3.1.2.4, the dollar amount of the Bank's Unsecured Claim. Currently, neither the Plan nor the Disclosure Statement appears to

---

[2] Although this information is included in paragraph IV.E on pages 77-78 of the Disclosure Statement, it also should be included in the Plan.

state what is the value of the Bank's collateral, from which the amount of the Bank's "Secured Claim" (as that term is defined in paragraph 1.2.73 on pages 16-17 of the Plan) can be determined. In this way, the Plan appears to be incomplete, and unduly opaque to all creditor-readers. The Debtor's plan must take a position. It is not sufficient for the Debtor merely to state, in paragraph IV.D of the Disclosure Statement on page 76, that "[t]o the extent necessary, the Debtor is prepared to establish the value of the Property at a hearing on confirmation of the Plan or otherwise." Nor is it sufficient for the Debtor merely to state, on page 76, that as of some undisclosed prepetition date, the "Property" value was "estimated" to be "$1.9 million or less as a going concern," by a "preliminary, draft opinion of value from Proteus USA, LLC," and that "an updated and final real estate valuation would yield" some undisclosed "substantially lower value."

Third, in describing the alternative treatment of the Bank's claim under paragraph 3.1.2, the Debtor must state what the amount of the monthly payments will be over the 30-year term, at the proposed interest rate, stated in paragraph 3.1.2.2.

Fourth, the Debtor's plan projections attached as Exhibit E appear to assume that the Bank will accept the Plan, and therefore receive the treatment described under paragraph 3.1.1 (Lender payments of $200,012 in each of year nos. 1 through 10). The Debtor also must attach as an Exhibit alternative plan projections, which assume that the Bank does not accept the Plan, and therefore receives the alternative treatment described under paragraph 3.1.2.

4. The Debtor must renumber the second paragraph "3.3.3" and paragraph 3.3.4 of the Plan on page 29, to make them 3.3.4 and 3.3.5, respectively. And there appears to be one or more words missing at the end of the sentence in the second paragraph 3.3.3. The Debtor must

3

21-40722-tjt    Doc 49    Filed 05/04/21    Entered 05/04/21 10:12:12    Page 3 of 7

correct this.

5. In paragraph 3.3.2 of the Plan on page 29, the Debtor states that "[i]n the event that Class I votes to accept this Plan, this Class III shall be vacant." This implies that there are no unsecured, nonpriority creditors with a claim exceeding $15,000.00, other than the Bank if it has a deficiency claim. If this is the case, the Debtor must say so explicitly.

6. In paragraph II.A of the Disclosure Statement on page 65, the Debtor states: "The Debtor seeks to liquidate its assets in this Chapter 11 proceeding pursuant to procedures set forth in Articles II, III, and V of the Plan." This statement implies that the Debtor's Plan is to liquidate, rather than reorganize and continue in business. As such, this statement is inconsistent with the Debtor's actual Plan, and with Debtor's statement in paragraph II.A (which should be numbered as paragraph II.C) on page 69 of the Disclosure Statement, which states: "The Debtor filed this Case prior to the scheduled foreclosure sale to preserve its assets and operations and to reorganize its business in a way that is most beneficial to Debtor and its creditors," and with the Debtor's statement in paragraph V.A of the Disclosure statement on page 80, that "[t]he Debtor intends to continue in business by reorganizing its operations and debt structure." The Debtor must correct this inconsistency.

7. In paragraph II.B.1 of the Disclosure Statement on page 66, the Debtor must fill in the current blank, by stating when Mr. Kallabat graduated from high school. Also in paragraph II.B.1 of the Disclosure Statement, the Debtor must describe the background for Bashir Toma and David Yousif.

8. In paragraph II.B.2 of the Disclosure Statement on page 67, the Debtor must state whether Bashir Toma and David Yousif received any compensation or benefits from the Debtor,

if they performed any services for the Debtor in the past, and whether they will perform any services for the Debtor in the future.

9. Paragraph 1.2.8 of the Plan on page 5 defines "Bank" to mean "Greenleaf Income Trust II." But in what is now labeled as paragraph II.A of the Disclosure Statement on page 68, the Debtor defines "Greenleaf Income Fund II" as the "Lender." The Debtor must change "Lender" to "Bank" so that this creditor is referred to consistently in the Plan and Disclosure Statement.

10. The Debtor must delete the last sentence of paragraph VI.B in the Disclosure Statement on page 84, because it is contrary to 11 U.S.C. § 1126(c). Instead, the Debtor must state: "If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan."

11. In paragraph VI.E of the Disclosure Statement on pages 86, the Debtor must delete subparagraphs 2.b and 2.c, because they do not apply to this plan.

12. In paragraph V.B.1 of the Disclosure Statement on page 80, the Debtor states: "The Debtor has attached as **Exhibit C**, financial summaries relating to the two fiscal years prior to the Petition Date (2019 and 2020)." (bold in original). But Exhibit C only contains information regard tax year 2019. The Debtor must provide financial information regarding 2020.

13. The Debtor must attach to the Plan and Disclosure Statement the exhibit described in paragraph 11.1 of the Plan on page 51 — namely, Exhibit 11.1, the "Assumption Notice," that identifies all executory contracts and unexpired leases to be assumed and all proposed cure amounts. In this case, it is not sufficient merely to say that this Exhibit is "[t]o be filed in the Plan Supplement," as the Plan's Exhibit list does (on pdf page 88), *i.e.*, to be filed "no later than

5

21-40722-tjt    Doc 49    Filed 05/04/21    Entered 05/04/21 10:12:12    Page 5 of 7

twenty (20) days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court." *See* Plan paragraph 1.2.59 on page 14 (definition of "Plan Supplement"). Without this Exhibit, the Plan is incomplete.

14. In Exhibit B to the Plan, the Debtor indicates that during the 90 days preceding the filing of the Debtor's bankruptcy petition, each of the four LLC members of the Debtor (the Holders of Allowed Interests) received distributions from the Debtor. The amount of the distribution to "Durald Y. Yousif a/k/a Durald Kestom," made on November 3, 2020, is listed as $25,000.00. But one cannot tell from Exhibit B what the amount of the distributions were to the other three LLC members, because the amounts stated in Exhibit B are lumped together with what apparently were loan repayments. The Debtor must disclose, in paragraph II.B.2 of the Disclosure Statement on page 67, how much in distributions each of the LLC members received from the Debtor during the 90-day pre-petition period, and the date(s) of such distributions.

Accordingly,

IT IS ORDERED that no later than **May 28, 2021**, the Debtor must file an amended combined plan and disclosure statement that is consistent with this Order.[3]

IT IS FURTHER ORDERED that no later than **May 28, 2021**, the Debtor also must file a redlined version of the amended combined plan and disclosure statement, showing the changes the Debtor has made to the "Debtor's Combined Plan of Reorganization and Disclosure Statement" filed April 27, 2021.

---

[3] The May 28, 2021 deadlines set by this Order are chosen because that is the date on which the Debtor's plan and disclosure statement were originally due to be filed, under the scheduling order referred to in footnote 1 above. If the Debtor files its amended plan and disclosure statement sooner than May 28, 2021, the Court will review that promptly after it is filed.

**Signed on May 4, 2021**

 /s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge